United States District Court
Southern District of Texas
**ENTERED**
June 03, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TEODORO GONZALEZ, | § |
| | § |
| | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. 3:13-CV-43 |
| | § |
| DR. EDGAR HULIPAS, *et al*, | § |
| | § |
| Defendants. | § |

**MEMORANDUM AND ORDER**

Plaintiff Teodoro Gonzalez (TDCJ #01530151), an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 (Dkt. 1) and, at the Court's request, a more definite statement (Dkt. 14). The Court will **DISMISS** Gonzalez's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

I.   **BACKGROUND**

According to his pleadings, Gonzalez tested positive for hepatitis C in 1994 and 2009 and for hepatitis B in 2008 (Dkt. 1 at p. 8). In December of 2010, while Gonzalez was incarcerated at the TDCJ's Darrington Unit, his annual tuberculosis skin test came up positive for TB-2 (Dkt. 1 at p. 6). After receiving the results of the TB test, Gonzalez consulted with one of the defendants, Jenny Abraham, a physician's assistant who was treating patients at Darrington (Dkt. 1 at p. 7). Abraham put Gonzalez on a nine-month

medication regimen whereby Gonzalez was to take 300 milligrams of Isoniazid and 50 milligrams of Pyridoxine twice a week (Dkt. 1 at p. 7). Gonzalez alleges that the other defendant, Dr. Edgar Hulipas, signed off on Abraham's treatment recommendation (Dkt. 1 at p. 7).

Three months into the treatment, in March of 2011, Gonzalez underwent an alanine aminotransferase ("ALT") test at the University of Texas Medical Branch ("UTMB") in Galveston (Dkt. 1 at p. 7). ALT is an enzyme that is often released into the bloodstream when the liver is damaged, and the test revealed elevated levels of ALT in Gonzalez's blood (Dkt. 1 at p. 7). The measured ALT level was 115 units per liter ("U/L"), roughly double the high end of the normal range (Dkt. 1 at p. 7). Two weeks later, Gonzalez presented to Dr. Hulipas with flu-like symptoms; Dr. Hulipas prescribed Benadryl, to be taken in 25 milligram doses twice a day for ten days (Dkt. 1 at p. 7).

By May of 2011, five months into the treatment, Gonzalez had an ALT level of 308 U/L; immediately upon learning of that ALT level, Dr. Hulipas halted the TB-2 treatment (Dkt. 1 at p. 8; Dkt. 14 at p. 1). By February of 2012, Gonzalez's ALT level had returned to the normal range (Dkt. 1 at p. 8). However, Gonzalez claims to have suffered permanent liver damage, along with pain and headaches, that could have been avoided had the TB-2 treatment never been prescribed (Dkt. 14 at p. 3).

Gonzalez alleges that Dr. Hulipas and Abraham should have known that the drug regimen they prescribed to treat the TB-2 posed a serious risk of permanent liver damage to Gonzalez because of his prior hepatitis diagnosis (Dkt. 14 at pp. 1–3). Gonzalez further

argues that the defendants should have stopped the regimen in March of 2011, when the first ALT test revealed a level of 115 U/L and Gonzalez developed flu-like symptoms (Dkt. 14 at pp. 1–3).

## II.    THE PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA").  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Gonzalez, proceeds *in forma pauperis*.  28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Gonzalez proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally

construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").   The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.   PRISONERS AND MEDICAL CARE

A prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of mankind." *Id*. at 104–06 (quotation marks omitted). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that

risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). This is an "extremely high standard to meet"—*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)—and, absent exceptional circumstances, it is not met by an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment. *Id.*; *Gobert*, 463 F.3d at 346. Even gross negligence does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004). Rather, the prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotation marks omitted).

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793

F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a Constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("[The] plaintiff stated that he had not received 'optimum' or 'best' medical treatment. Were this the legal standard, a trial of the issues might be required.").

At bottom, the deliberate-indifference standard "permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversights." *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quotation marks and brackets removed). Indeed, it is identical to the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

## IV.   GONZALEZ'S ALLEGATIONS DO NOT RISE TO THE LEVEL OF DELIBERATE INDIFFERENCE.

Gonzalez's allegations do not establish deliberate indifference on the part of the defendants to his serious medical needs. The allegations amount to, if anything, medical malpractice, which is not enough to state an Eighth Amendment claim for cruel and

unusual punishment. The Court notes that Gonzalez essentially (and presumably unwittingly) concedes as much when he couches his claims in terms of negligence, violations of the applicable standard of care, and gross negligence (Dkt. 1 at pp. 9–14). As the Fifth Circuit has pointed out, even gross negligence does not equal deliberate indifference—"the former is a heightened degree of negligence, while the latter is a lesser form of intent." *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013).

Taking Gonzalez's allegations as true, it is fair to say that the defendants misgauged the risk of liver damage associated with the TB-2 treatment. However, there is no sign that they prescribed a contraindicated drug regimen *intentionally*. To the contrary, when a test revealed in May of 2011 that Gonzalez's ALT level had shot up to 308 U/L, the defendants immediately halted the treatment, at which point Gonzalez's ALT levels began to improve. Notably, the TB-2 treatment was only halfway finished when the defendants ceased it. The early termination of the treatment alone, coming as it did on the same day as the 308 U/L test result, conclusively negates any contention that the defendants deliberately disregarded Gonzalez's medical needs.

The defendants, again assuming the truth of these allegations, simply made a mistake in treating a serious medical condition and then took steps to correct it (though perhaps too late, if Gonzalez really did suffer permanent liver damage). Their actions did not evince the requisite wanton disregard for Gonzalez's serious medical needs. Gonzalez has not stated a viable claim under Section 1983.

**V.      CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1.      Gonzalez's complaint is **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

2.      All pending motions are **DENIED** as moot.

**The Clerk is directed to provide a copy of this order to the parties.  The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Galveston, Texas, this 3rd day of June, 2016.

George C. Hanks Jr.
United States District Judge